UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA      :

     :

       - v -      :

     :        **22 CR 411 (JPC)**

**BRANDY ARIAS,**      :
       Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## SENTENCING MEMORANDUM
## ON BEHALF OF BRANDY ARIAS

DAVID PATTON, ESQ.
Federal Defenders of New York
Attorney for Defendant
**BRANDY ARIAS**
52 Duane Street, 10th Floor
New York, NY 10007
Tel.: (212) 417-8728
**Amy Gallicchio**, Esq.
Of Counsel

TO:      Damian Williams, Esq.
       United States Attorney
       Southern District of New York
       1 St. Andrew's Plaza
       New York, NY 10007

Attn:      Ni Quan and Madison Smyser
       Assistant United States Attorneys

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

February 2, 2023

**BY ECF**

Judge John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:  **United States v. Brandy Arias**
> **22 Cr. 411 (JPC)**

Dear Judge Cronan:

Brandy Arias was only twenty-one years old when she regrettably committed the series of firearm sales that bring her before the Court.  She is a young woman with a personal history of childhood trauma resulting from physical and sexual abuse, neglect and abandonment.  The dysfunction and instability in Ms. Arias' childhood undoubtedly influenced her reasoning and decision making as a young adult, including the decision to sell firearms.  Ms. Arias is profoundly sorry for her conduct and recognizes it inherent dangerousness.  She writes to the Court, "My behavior is unacceptable.  I look back on it and am really ashamed.  I know that gun violence can leave mothers without their children, children without their parents, and families without their loved ones.  And by selling guns, I contributed to that terrible possibility and too often, that reality.  Because of my selfishness and needs, I didn't realize what I was taking from others. I take full responsibility for my actions.  And I also apologize to any community that is harmed by my actions."
See Brandy Arias letter, attached as Exhibit A.

Judge John P. Cronan                                          February 2, 2023
<u>United States v. Brandy Arias</u>
**22 Cr. 411 (JPC)**

Ms. Arias' arrest and incarceration in this case have been revelatory.  The seven months she has been detained at the MDC under harsh and inhumane conditions have been punishing and deterring.   Ms. Arias is committed to using the lessons she has learned so that upon completion of her sentence she can pursue her dreams and be a productive, law-abiding citizen and role model for others.

Ms. Arias appeared before the Court on November 9, 2022 and admitted her guilt pursuant to a plea agreement to Counts 1 and 2 of the indictment charging her with firearms trafficking and interstate transportation and receipt of firearms, respectively.  She will appear before the Court for sentencing February 8, 2023. At that time, we will ask the Court to impose a sentence of time served followed by three years of supervised release.   Such a sentence, under all of the circumstances, is "sufficient but not greater than necessary" to serve the purposes of sentencing as set out in 18 U.S.C. §3553(A)(2).

### A SENTENCE OF TIME SERVED SERVES
### THE GOALS OF 18 U.S.C. § 3553(a)

Ms. Arias and the Government entered into a plea agreement stipulating the applicable guideline range to be 57 to 71 months.  The Department of Probation ("Probation"), "sympathetic to the defendant's unstable childhood and unfortunate history of abuse at the hands of her mother and history of foster case," recommends a variance to a sentence of 42 months, in light of Ms. Arias' "inadequate guidance as a youth, no known history of violence, and her mental health concerns."  PSR at 26.

Although Probation's acknowledgement that a variance is warranted and its careful consideration of Mr. Aria's background are welcomed, I submit that Probation significantly undervalued the mitigating worth of the trauma she endured as a child and the many other mitigating factors present here.  Even a sentence of 42 months, under the circumstances of this case, would be an extremely harsh and unreasonable result. <u>See</u> <u>Nelson v. United States,</u> 555 U.S. 350, 352 (2009) ("While the Court must calculate the applicable Sentencing Guidelines

Judge John P. Cronan                                             February 2, 2023
<u>United States v. Brandy Arias</u>
**22 Cr. 411 (JPC)**

range, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.").

Probation's own recitation of Mr. Aria's life offers compelling mitigation justifying a substantial variance from the guidelines far beyond the 42 months they recommend:

> *Since the age of 15, the defendant has lived on her own. However, from an early age she had to learn to fend for herself. At age seven, her mother purposely placed Arias' hand over a flame on a stove. This is a horrific experience for any living being to experience and especially difficult for a child to understand. The defendant was failed by her mother and then the foster care system, which placed her in a foster home, in which she was reportedly sexually abused. Arias was placed in approximately four different foster homes over the course of four years. Although the defendant was placed back in her mother's care after being discharged from foster care, her mother still was not stable and sent Arias to live with her father. While the defendant's father was able to take Arias into his home, Arias still ended up leaving home at age 15 and living with a friend.*

PSR at 25.

Below are the §3553 factors and their application to Ms. Arias in support of a downward variance from the Guidelines and the requested sentence of time served and a term of supervised release.

## A.  Personal History and Characteristics of Ms. Arias

Ms. Aria's traumatic history alone provides the Court with powerful mitigation to warrant a substantial departure from the stipulated guidelines.  Her childhood was characterized by abuse, neglect and parental abandonment.  She had no stability or sense of security as a child and never felt loved unconditionally by any parental figure.

Ms. Aria's mother was abusive, disciplining her with extreme corporal punishment.  ACS records reflect that on one occasion, when Ms. Arias was six years old, her mother burned her hands over a hot stove because she thought that

Judge John P. Cronan                                February 2, 2023
<u>United States v. Brandy Arias</u>
**22 Cr. 411 (JPC)**

her daughter had stolen pencils from school.   Ms. Arias suffered second degree burns and her mother was arrested.  Thereafter, Ms. Arias was placed in foster care where she was sexually abused.  She was eventually returned to her mother's home, but the physical and verbal abuse continued.  In addition to burning her hands, her mother disciplined her by making her kneel on rice, slapping her in the head and striking her with a belt.

When she was 11 or 12 years old, Ms. Arias begun cutting her wrists and was hospitalized after expressing suicidal thoughts.  Even after this brief hospitalization, her mother failed to provide adequate care and neglected to take Ms. Arias to scheduled therapy sessions.  And then she abandoned her.  This occurred  when on one occasion Ms. Arias returned from her father's apartment without the $100 her mother demanded she collect from him.  According to ACS records, Ms. Arias' mother told her that she had "cleaned her hands" of her and to pack her bags and go back to her father's house.  Ms. Arias' mother told ACS that "I'm no longer responsible for her."  And, as she appears to still be doing (PSR ¶ 68), Ms. Arias' mother blamed Ms. Arias, then a child, for her own inability to parent.  Ms. Arias' life with her father was better.  There was no physical abuse or corporal punishment there and he was compliant with her medical and mental health needs.  But the emotional – and physical – scars were already present.

Despite the lack of nurturing and love, Ms. Arias is a kind and compassionate young woman.  She has the love and support from a group of friends who have become her surrogate family.  In her letter to the Court, her surrogate sister, Cassandra Quinones, writes of Ms. Arias' generosity, selflessness, and work ethic. <u>See</u> Exhibit B.  She also attests to Ms. Arias' remorse and regret and her faith in Ms. Arias' ability to find a decent job when she is released.   Ms. Quinones' brother, Christopher Cartagena, writes that "Brandy is like my sister," and he describes Ms. Arias as kind, warm, extremely hard working and determined.  <u>See</u> Exhibit C.  He witnessed firsthand the cruelty of Ms. Arias' mother toward her.  He promises to support Ms. Arias when she is released from prison.  <u>Id</u>.

Judge John P. Cronan                                           February 2, 2023
United States v. Brandy Arias
**22 Cr. 411 (JPC)**

Ms. Arias' kindness and compassion have been on display during her detention at the MDC.  Exhibits D and E are letters of support from two women, Keyli Gomez and Jessica Pelkey, who are detained with Ms. Arias.  They are poignant letters describing how thoughtfully Ms. Arias treats others and how she has used her time at the MDC productively and has taken every opportunity to better herself.  Ms. Gomez and Ms. Pelkey also attest to Ms. Arias' sincere remorse and desire to help others, especially victims of gun violence, when she is released.

## B. The Nature and Circumstances of the Offense

The nature and circumstances of the offense also provide the Court with mitigation supporting a variance.  As an initial matter, I note for the Court that Mr. Arias' guideline range is inflated, in part, because 1 of the 20 firearms that she sold had an obliterated serial number, increasing her base offense level by 4 levels.  U.S.S.G. §2K2.1(b)(4).  Ms. Arias stipulated to the application of this enhancement but asks the Court to consider, as a mitigating factor, that it was only 1 gun, and that Ms. Arias was not responsible for the gun's defacement.

Ms. Arias' conduct was motivated by financial need and rooted in poor decision making and judgment. As was already described, Ms. Arias lacked the structure, guidance and a solid foundation she needed to navigate the world as an adult.  She was only 21 years old, struggling to make her way in life and "fending for herself."  She had no home and no parents upon whom she could rely.  She was supporting herself financially and regularly sending money, clothing and household goods to the one person with whom she has a special affection and bond, her grandmother in the Dominican Republic.   As Ms. Arias explained to Probation, she wanted to ensure that her grandmother, who lives in impoverished conditions and who suffers from Alzheimer's disease, had the medication she needed and some degree of comfort in her waning years. PSR ¶ 33.

Judge John P. Cronan                                        February 2, 2023
United States v. Brandy Arias
**22 Cr. 411 (JPC)**

Ms. Arias' youth is a significant factor for the Court to consider.  There is growing recognition that age plays a significant role in criminal behavior and should be considered at sentencing. See United States Sentencing Commission Report Youthful Offenders in the Federal System (May 2015), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf. Importantly, the Sentencing Commission has found that people may not gain full reasoning skill and ability until they have reached the age of 25. The prefrontal cortex of the brain, which is utilized in impulse control, emotional reactions, executive function, and decision making is the last part of the brain to develop. Id. at 6. In evaluating criminal conduct, the Sentencing Commission expanded their own definition of "youthful offender" to those as old as 25 when they face federal sentencing. Id. at 5.

Ms. Arias has had seven months to think about the wrongfulness of her actions.  The insight expressed in her letter to the Court is impressive and demonstrates remorse and acceptance of responsibility.  It also shows maturity.  She writes, "My vision is not only to go home to my community and share my story, I would also like to help victims of gun violence as well. I want to start by volunteering in youth programs and eventually start up my own program for kids and young adults who have suffered from gun violence, show them that no matter what they have been through there is help and support out there for them. Judge Cronan I know I can make a difference!" Exhibit A.

## C. The Need for the Sentence Imposed

In addition to the nature and circumstances of the offense and the history and characteristics of the defendant, Section 3553(a)(2) requires the Court to consider the need for the sentence imposed to punish, deter, incapacitate and rehabilitate.  For Ms. Arias, further incarceration is not necessary to serve the goals of sentencing.  Despite the guideline range of 57 to 71 months, a sentence of time

Judge John P. Cronan                                    February 2, 2023
United States v. Brandy Arias
**22 Cr. 411 (JPC)**

served (seven months) more than adequately will serve the need for punishment and deterrence, especially for a 22-year-old who has never served time in prison and given the conditions of her confinement.

Courts have recognized that prison has a greater significance for those who have served little or no prison time in the past, and that that should be taken into account at sentencing.  See United States v. Mishoe, 241 F.3d 214, 220 (2d Cir. 2001) (recognizing in the context of the career offender guideline that the amount of prior prison time is relevant to determining the deterrent effect of the sentence to be imposed); see also, e.g., United States v. Baker, 445 F.3d 987, 992 (7th Cir. 2006) (affirming below-Guidelines sentence on government's appeal, and approving of "the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned") (citing § 3553(a)(2)(A)–(B)); United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

By now the Court is well aware of the punitive and restrictive conditions under which inmates at the MDC have been detained during the life of the coronavirus pandemic.  Although Ms. Arias was not in custody during the height of the pandemic, she is experiencing the continuing effects thereof, that include lock downs, restrictions and personal deprivations.  Ms. Arias must, of course, be held responsible for her actions but when fashioning a sentence, I ask the Court to take into consideration the conditions of confinement she has had to endure.

Furthermore, Ms. Arias' experience at the MDC and the harsh consequences she now faces, provide sufficient deterrence to any future criminal conduct not only for her but for others aware of her experience. Seven months in prison is a significant amount of time and is certainly enough time to send a strong message to others of the consequences of similar behavior.

Judge John P. Cronan                                        February 2, 2023
<u>United States v. Brandy Arias</u>
**22 Cr. 411 (JPC)**

Moreover, I ask the Court to consider that the jail experience for women is much harsher than it is for men.  In April 2022, the United States Senate Permanent Subcommittee on Investigations launched a bipartisan investigation into sexual abuse of female prisoners in the Federal Bureau of Prisons.  <u>Available</u> <u>at</u> <u>https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf</u>.

   The Subcommittee found:

- BOP employees sexually abused female prisoners in at least two-thirds (19 of 29 facilities) of federal prisons that have held women over the past decade.

- BOP has failed to successfully implement the Prison Rape Elimination Act ("PREA"). It failed to prevent, detect, and stop recurring sexual abuse in at least four federal prisons, including abuse by senior prison officials. At FCI Dublin, for example, the former Warden and Chaplain both sexually abused female prisoners.

- BOP management failures enabled continued sexual abuse of female prisoners by BOP's own employees.

- BOP Office of Internal Affairs' ("BOP OIA" or "OIA") investigative practices are seriously flawed. There is currently a backlog of 8,000 internal affairs cases, including at least hundreds of sexual abuse cases.

<u>Id</u>. at 1.

Ms. Arias' history of sexual abuse makes her particularly vulnerable to trauma.  In this regard, the Subcommittee found, "Women entering prison are more likely to have experienced physical and/or sexual abuse as children and adults, as compared to men in prison. According to a February 2020 report by the U.S. Commission on Civil Rights, research suggests that at least 50 percent of women entering prison report that they experienced physical and/or sexual abuse before their incarceration. They are also significantly more likely to be sexually harassed

Judge John P. Cronan                                    February 2, 2023
<u>United States v. Brandy Arias</u>
**22 Cr. 411 (JPC)**

and abused while incarcerated. According to *the National Standards to Prevent, Detect, and Respond to Prison Rape: Final Rule*, women with histories of sexual abuse—including women in prisons and jails—are particularly traumatized by subsequent abuse." <u>Id</u>. at 6.

Ms. Arias' detention has been challenging but her conduct, even in that harsh environment, demonstrates rehabilitation and genuine remorse and regret for her conduct. She has conducted herself maturely while detained, incurred no disciplinary infractions and took advantage of the limited programs available at the MDC.  Attached are four certificates of achievement earned by Ms. Arias for the successful completion of these rehabilitative programs.  <u>See</u> Exhibit F.

Finally, in determining the appropriate sentence, I as the Court to consider that, more than anything, Ms. Arias would benefit from and welcome mental health counseling to address the painful experiences of her childhood and to heal the scars those experiences left behind.  Ms. Arias writes, "I am not blaming my actions on my past, but as you probably read in my PSR, I haven't had the best up bringing and I have a very complicated relationship with my parents . . . I know I have a lot of issues in my past to deal with and hope to get counseling someday so that the wounds can heal." Exhibit A.   As part of Ms. Arias' sentence, Probation recommends mental health treatment "based on the defendant's emotional issues and believe[s] this condition will ensure public safety as well as assist with the defendant's positive adjustment to community-based supervision."  Even under the best of circumstances, the BOP is not the optimal place to received mental health treatment.  Ms. Arias will be best served in a therapeutic program in the community where she will have the loving support of her family.

**D. Sentence Parity**

In imposing a sentence, to the extent possible, the Court must attempt to preserve sentence parity between similarly situated defendants.  Although the

Judge John P. Cronan                                    February 2, 2023
United States v. Brandy Arias
**22 Cr. 411 (JPC)**

guidelines in firearms cases frequently call for a period of incarceration, downward variances in firearms cases are common in this District.  In the 2021 fiscal year, courts in this District sentenced defendants below the advisory sentencing guidelines in **66.7%** of firearm cases. See Table 10, U.S.S.C., Statistical Information Packet, Fiscal Year 2021, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/nys21.pdf.   As such, a sentence of time served and term of supervised release would not result in unwarranted sentencing disparity.

## CONCLUSION

For the reasons set forth herein, a sentence of time served followed by three years of supervised release will adequately reflect the serious nature of the offense and provide sufficient punishment, deterrence and rehabilitation.

Respectfully submitted,

 /s/ *Amy Gallicchio*

_____

Amy Gallicchio
Assistant Federal Defender
Federal Defenders of New York
212-417-8728

Cc:    Ni Quan and Madison Smyser
         Assistant United States Attorneys

10